UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS ROMERO, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | Magistrate Judge |
| | ) | |
| NEP ELECTRONICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Carlos Romero (hereinafter "Plaintiff"), by and through his attorney, Mario E. Utreras, Utreras Law Offices, Inc., asserts the following facts and causes of action against NEP Electronics, Inc., ("NEP" or "Defendant"), stating the following as the basis for his Complaint at law:

### Parties, Jurisdiction, And Venue

1. Defendant NEP Electronics, Inc. (hereinafter "Defendant"), is a corporation registered to do business in Illinois, and which does business in Illinois. Defendant's headquarters are located in Wood Dale, DuPage County, Illinois. At the time of the adverse actions against Plaintiff, Defendant had over 500 employees who worked for it at least 20 calendar weeks in the current or previous year.

2. Carlos Romero is a resident and citizen of Glendale Heights, DuPage County, Illinois.

3. Plaintiff experienced Defendant's adverse employment actions in DuPage County, Illinois.

4. Defendant's business is distributing passive and electro-mechanical electronic components as well as supplying cable assembly services.

5. Plaintiff filed charges of disability discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC"), case no. 440-2012-01716, on January 6, 2012.

6. Plaintiff received a Notice of Right to Sue from the EEOC signed and dated July 25, 2014. A copy of the Notice of Right to Sue is attached to this Complaint as "Exhibit A."

7. Plaintiff bring this cause of action against Defendant for disability discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA").

8. Plaintiff brings a supplemental Illinois state common law claim of wrongful termination in violation of public policy for having asserted rights under the Illinois Workman's Compensation Act.

9. This Court has original jurisdiction to hear these claims under 28 U.S.C. §§ 1331, 1343(a)(3) & (a)(4).

10. This Court has supplemental jurisdiction over the state common law claim alleged herein pursuant to 28 U.S.C. § l367(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **FACTS**

12. Plaintiff began working for Defendant on November 19, 1993 as a Machine Operator. In that position, he was required to lift rolls from a barrel, cut between 5-10 cables an hour, lift boxes of plastic, with the ability to stack them, and stand for several hours during a shift.

13. On September 11, 2010, Plaintiff suffered a work injury to his lower back, which he immediately reported to his supervisor, Fernando Olea ("Olea").

14. Plaintiff saw Defendant's physicians on the next work day, and was placed on limitations of 15 lbs lifting, with no twisting, bending, and no prolonged periods of standing.

15. Defendant accommodated Plaintiff at that time, by providing him with an assistant to lift boxes and cables, while Plaintiff tied the cable rolls.

16. Plaintiff was accommodated for approximately three (3) weeks, but Defendant subsequently stated that Plaintiff had committed a work order error on September 19, 2010, by cutting too many pieces of cable. Defendant asserted that Plaintiff had wasted material, and he received a written warning.

17. Prior to September 19, 2010, Plaintiff had never been warned about overcutting pieces or wasting material. Other employees who also overcut pieces, and thus, wasted material, but did not request medical accommodation did not receive written warnings from Defendant.

18. On September 15, 2010, Plaintiff was informed by Olea that he had been tardy 53 times in the past. Prior to asserting that he had a medical condition requiring accommodation, Plaintiff had never been informed about any tardiness problems.

19. In October 2010, Dr. Jacklyn Martinez, Plaintiff's physician, issued additional work limitations to Plaintiff, restricting his lifting, with no twisting, and limiting long periods of standing and sitting. Plaintiff passed these on to his manager at Defendant, Chris Colber.

20. Defendant subsequently moved Plaintiff to a desk job assembling small parts, which was a position that other employees of Defendant also performed. Plaintiff continued in this role until November 26, 2010.

21. Plaintiff subsequently began experiencing carpal tunnel syndrome, and Dr. Martinez limited Plaintiff to no bending, no sitting, and no standing. Given this limitation, Plaintiff was accommodated by Defendant by being allowed to be off of work, since there was no position that Plaintiff could allegedly reasonably be accommodated for, given Dr. Martinez' limitations on him.

22. Plaintiff met with Dr. Avi Bernstein of the Spine Center on February 24, 2011, who reported that he had no disc herniation or nerve root compression, but that he did have lumber degeneration.

23. Dr. Berenstein indicated Plaintiff could perform light duty work, and indicated he could lift up to 15 lbs, and perform limited repetitive bending, lifting, or twisting.

24. Plaintiff provided these limitations to Defendant in March 2011, and was advised that based on these limitations, they had no work that he could be reasonably accommodated for at Defendant.

25. Defendant had previously accommodated Plaintiff when he had similar, or more restrictive, physical limitations.

26. Defendant subsequently sent Plaintiff to a hand specialist, and Plaintiff obtained surgery on each hand, in May and July 2011.

27. Plaintiff was given a no-work restriction from Dr. Kenneth Schiffman in May 2011, and another one in June 2011.

28. On August 24, 2011, Dr. Schiffman issued Plaintiff a return to work lifting restriction limiting him to 15 lbs lifting, that he was to avoid repetitive gripping, and stating that he could resume regular duties by September 2011.

4

29. Plaintiff provided this work restriction to Olea's assistant Tom (last name unknown), as Olea was not present.

30. Plaintiff returned to work on one day in August or September 2011, but only worked for three (3) hours

31. Upon his arrival, Olea told Plaintiff to go to the lunchroom to wait for a Human Resources representative. When the representative arrived, he was informed that Defendant had no work that they could not accommodate his limitations, and he was sent home.

32. On September 4, 2011, Plaintiff applied for unemployment benefits, based on his belief that he was eligible for the same, due to the fact that he had not been working.

33. On September 23, 2011, Plaintiff received another limitation from Dr. Schiffman, containing the same work limitations as those he received on August 24, 2011.

34. On September 27, 2011, Sandra Nelly ("Nelly"), Defendant's Human Resources Manager, sent Plaintiff a letter informing him that in light of his work limitations, Defendant had "no suitable position" for him.

35. By September 27, 2011, by separate letter, Nelly advised Plaintiff that it was in receipt of a Charge of Discrimination and retaliation that he had filed with the Illinois Department of Human Rights, asserting that he had been discriminated and retaliated by Defendant due to his disability. The letter invited Plaintiff to make a settlement demand, and stated that "If I do not receive anything from you by next Wednesday, October 5, 2011, NEP will proceed accordingly."

36. On October 3, 2011, Plaintiff's workman compensation attorney, Richard C. Shollenberger Jr., of the law firm of Lewis & Davidson, Ltd., sent Defendant a certified letter advising that they were representing Plaintiff in connection with workman's compensation claims involving injuries he suffered at Defendant.

37. On October 6, 2011, Plaintiff had a letter delivered to a representative from Defendant, Sulema Hernandez, responsive to Nelly's September 27, 2011 letter to him. In that letter, dated October 5, 2011 by Plaintiff, he invited Defendant to propose a settlement.

38. In a letter dated October 17, 2011, Plaintiff received a letter from Nelly informing him that he had voluntarily resigned from Defendant, given the fact that Plaintiff had asserted to the Illinois Department of Employment Security that he had been terminated effective September 4, 2011, and referencing a letter from Plaintiff's workman's compensation attorneys dated October 5, 2011 claiming that Plaintiff was physically unable to work.

39. Plaintiff's workman compensation attorneys never sent a letter dated October 5, 2011 claiming that Plaintiff could not work.

40. Plaintiff's workman compensation attorney Schollenberger responded to Defendant via letter dated October 25, 2011, clarifying that Plaintiff had been ready and willing to return to modified work given his work limitations issued by his physicians. Schollenberger further clarified that the only reason Plaintiff applied for unemployment benefits with an effective date of September 4, 2011 had been due to Plaintiff's dire financial circumstances, in which he believed he was eligible for such benefits due to his inability to work for a period of months, but that Plaintiff believed that Defendant would return him to work. Schollenberger asked that Defendant correct their personnel records regarding Plaintiff's employment status and continue his employment relationship pending completion of treatment and determination of final work restrictions by his treating physician.

41. Defendant never corrected its personnel records, and never returned Plaintiff to work.

42. Defendant ceased engaging in the interactive process to attempt to define the precise limitations of Plaintiff's disability, in terms of its nature, severity, and duration, or to learn the types of accommodations that would be most effective.

43. Plaintiff could have performed the essential functions of his position with a reasonable accommodation, or alternatively, another available position at Defendant.

44. Defendant has an office on site at their terminal, Terminal 507, in Joliet, Illinois, where it provided reasonable accommodations to other employees with work limitations requiring them to perform light duty.

45. Defendant failed to provide Plaintiff with a reasonable work accommodation, as requested in August and September, 2011. As a result, Plaintiff was unable to return to work, resulting in the loss of wages and benefits to him.

46. Plaintiff applied for worker's compensation benefits on or around October 2011 as a result of the injury he incurred during the course of employment with Defendant.

47. Defendant was aware prior to October 17, 2011 that Plaintiff had applied for worker's compensation benefits against it for the injury he incurred during the course of employment with it.

48. On October 17, 2011, Defendant terminated Plaintiff, without providing him with a reasonable accommodation, or engaging in the interactive process to determine whether it could reasonably accommodate him.

49. On October 17, 2011, the date Defendant terminated Plaintiff, Plaintiff's worker's compensation claim against Defendant remained pending.

## COUNT I
## FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

50. Plaintiff incorporates paragraphs 1-49 above into Count I as though fully set forth herein.

51. Plaintiff has a qualifying disability consisting of a physical impairment, and a record of a physical impairment, that substantially impacts his neuromuscular functions, within the meaning of the ADA.

52. As a result of Plaintiff's physical impairment, he was substantially limited in his ability to lift, grip, sit, and stand, within the meaning of the ADA. .

53. Plaintiff was a qualified individual able to perform the essential functions of his position with a reasonable accommodation, or alternatively, another position within Defendant.

54. Defendant ceased engaging in the interactive process with Plaintiff to attempt to define the limits of his disability, in terms of its nature, severity, duration, or the types of accommodations that would be most effective. Defendant refused to provide reasonable accommodations to Plaintiff later in his employment, where Plaintiff had the same, or lesser limitations than he did when Defendant earlier accommodated him.

55. In addition, or in the alternative, Defendant could have reasonably accommodated Plaintiff by reassigning him to a vacant position, and/or a light duty position.

56. In addition, or in the alternative, Defendant could have reasonably accommodated Plaintiff by providing him additional unpaid time off, as it had previously done, particularly in light of the last update by Dr. Schiffman dated August 24, 2011, advising that Plaintiff could resume regular duties by September 2011.

57. Defendant would not have experienced undue hardship in providing Plaintiff with a reasonable accommodation.

58. Defendant refused to continue to accommodate Plaintiff.

59. Defendant terminated Plaintiff on or before October 17, 2011.

60. As a result of Defendant's failure to accommodate him, Plaintiff experienced adverse employment actions in the form of lost pay and benefits, termination, loss of other actual or potential fringe benefits, and emotional distress damages.

WHEREFORE, Plaintiff requests judgment in his favor, and against Defendant on Count I of this Complaint, and such other relief as this Honorable Court deems appropriate.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

61. Plaintiff incorporate paragraphs 1-60 above into Count II as though fully set forth herein.

62. Plaintiff requested reasonable accommodations, through his physicians, of Defendant beginning in September 2010 through August 2011.

63. Defendant refused to continue to accommodate Plaintiff.

64. Defendant terminated Plaintiff on or before October 17, 2011. Defendant falsely asserted that Plaintiff had constructively resigned effective September 4, 2014, and that Plaintiff's workman's compensation attorney had informed them in writing on October 5, 2011 that Plaintiff was incapable of working.

65. Defendant terminated Plaintiff in retaliation for having continued to request reasonable work accommodations on numerous prior instances, the last of which was in September 2011.

66. In addition, or in the alternative, Defendant terminated Plaintiff for filing claims of disability discrimination with the Illinois Department of Human Rights ("IDHR") in August or September 2011.

67. A causal connection exists between Plaintiff's last request for an accommodation and the date of his termination, on October 17, 2011.

68. In addition, or in the alternative, a causal connection exists between Plaintiff's filing of claims of disability discrimination with IDHR and Defendant's termination of him on October 17, 2011.

69. As a result of Defendant's retaliatory termination of Plaintiff, he experienced adverse employment actions in the form of lost pay and benefits, loss of other actual or potential fringe benefits, and emotional distress damages.

WHEREFORE, Plaintiff requests judgment in his favor, and against Defendant on Count I of this Complaint, and such other relief as this Honorable Court deems appropriate

## COUNT III
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
## (FOR FILING A WORKER' COMPENSATION CLAIM)

70. Plaintiff incorporates paragraphs 1 - 69, as though fully stated herein, into Count III.

71. Plaintiff was an employee of Defendant prior to filing a workers' compensation claim against it.

72. Plaintiff filed his claim for workers' compensation claim prior to his termination by Defendant, and Defendant was aware of his filing prior to terminating him.

73. Plaintiff's act of filing a workers' compensation claim against Defendant was an action protected under the Illinois Workers' Compensation Act.

74. The Illinois' Workers' Compensation Act provides that:

> [i]t shall be unlawful for any employer, . . . to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this [the Workers Compensation] Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

> It shall be unlawful for any employer, . . . to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.
>
> 820 ILCS 305/4(h).

75. Under Illinois common law, it is a violation of public policy to discharge an employee in retaliation for having filed a workers' compensation claim.

76. Plaintiff was terminated by Defendant after filing his workers' compensation claim.

77. A causal connection exists between Plaintiff's exercising of workers' compensation rights and remedies, and his termination by Defendant.

## **CONCLUSION**

Plaintiff requests a declaration of judgment in his favor, and against Defendant, for the causes of action set forth in Counts I, II, and III, as well as the following:

a. Actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Liquidated damages;

e. Back pay;

f. Front pay;

g. The value for loss of benefits;

h. Emotional pain and suffering;

i. Make-whole relief to Plaintiff;

j. Attorneys' fees;

k. Costs;

l.        Jury trial;

m.       An unspecified monetary award; and

n.       Such other relief as this Honorable Court deems appropriate.

                                  Respectfully submitted,

                                  CARLOS ROMERO

                              By:    /s/ Mario E. Utreras
                                        Plaintiff's Attorney

UTRERAS LAW OFFICES, INC.
205 W. Wacker Dr., Suite 1600
Chicago, Illinois 60606
312-263-5580 / 888-263-6148 fax
mutreras@utreraslaw.com
Atty No. 6230426